UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 10 CR 747-2,3 |
| vs. ) | Judge Joan Humphrey Lefkow |
| ) | |
| JOSE ANTONIO LOPEZ and ) | |
| ANTONIO EVANS ) | |

**GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

The UNITED STATES OF AMERICA, by its attorney, GARY S. SHAPIRO, Acting United States Attorney for the Northern District of Illinois, respectfully submits its consolidated motions *in limine* seeking pretrial rulings on the admissibility of certain evidence and the propriety of certain arguments, as set forth below. The indictment in this case charges defendants Jose Antonio Lopez and Antonio Evans with conspiracy to commit kidnapping, in violation of Title 18, United States Code, Section 1201(c) (Count One) and kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1). More specifically, the indictment alleges that beginning no early than in or about early April 2010, and continuing until at least April 25, 2010, in Cicero and Chicago, in the Northern District of Illinois, defendants, along with co-defendant Jerry Zambrano, did conspire with each other and others to knowingly and unlawfully seize, confine, kidnap, abduct, carry away, and hold for ransom or reward another person, namely Minor A, and to use means, facilities, and instrumentalities of interstate commerce in committing and in furtherance of the offense, namely, telephones operated on the interstate network of AT&T, a telephone service provider.

I.    **Admissibility of Cell Site Evidence and Analysis**

At trial, the government intends to introduce cell site records for phones connected to Lopez, Evans, and co-defendant Jerry Zambrano, who has pleaded guilty and is expected to be a government witness at trial. Cell site records reflect the location of the cell tower and antenna face used at the start and end of a cellular telephone call. These records are commonly used by law enforcement to analyze the past use of a cellular phone and thereby obtain information about a subject's whereabouts, activities, and patterns of behavior.

The government's position is that the cell site records themselves are business records under Federal Rule of Evidence 803(6). In the event the parties do not stipulate to that fact, the government intends to call a witness from Sprint Nextel to testify that the cell site records produced to the government during the investigation are business records kept in the ordinary course of Sprint Nextel's business, that the records are made at or near the time of the activity, and that Sprint Nextel's regular business practice was to keep the records.

After admitting the cell site records themselves into evidence, the government intends to call FBI Special Agent Joseph Raschke as a witness. Agent Raschke is expected to testify about exhibits that he prepared based in part on the cell site records. These exhibits are maps reflecting: (1) the location of cell towers used by phones connected to Lopez, Evans, and Zambrano during various points of the conspiracy; (2) a comparison of the locations of some of the cell towers to other locations relevant to this case, including the location of the kidnapping, the location of where the victim was held, and the location of pay phones used to make ransom calls; and (3) estimated ranges around the cell towers used by phones

connected to Lopez, Evans, and Zambrano. Drafts of the maps created during the investigation in this case have been produced to the defendants. Finalized versions to be used as trial exhibits will be turned over when completed.

With respect to Agent Raschke's map containing information about the location of cell towers, Agent Raschke will testify that, in creating the maps, he used the cell site records themselves and Google Maps or a similar program to determine the locations of the cell towers that phones connected to Lopez, Evans, and Zambrano used during the kidnapping. In addition to illustrating the location of the cell towers, some of the charts will also compare the cell tower locations to other locations relevant to this case, such as the location of pay phones used for ransom calls, the location of the kidnapping itself, or the location where evidence presented at trial will show that Minor A was held captive.

This portion of Agent Raschke's testimony is not expert testimony because Agent Raschke is merely creating maps with locations of cell towers compared to other locations. Such testimony would be appropriate lay opinion testimony. *See United States v. Lee*, No. 07-3985, 07-4642, 07-4687, 2009 WL 2219273, at *6 (3d Cir. July 27, 2009) (allowing lay person to testify about map prepared using GPS program because program "relies on a tool used in everyday life, and requires no specialized training or knowledge."); *United States v. Thompson*, No. 09-4154, 2010 WL 3529305, at 858 (3d Cir. Sept. 13, 2010). Indeed, some court have taken judicial notice that the mapping tools are accurate. *See United States v. Stewart*, No. 3:07cr51, 2007 WL 2437514, at *1 n.2 (E.D. Va. Aug. 22, 2007); *United States*

*v. Lente*, 759 F. Supp. 2d 1305, 1317 n.7 (D.N.M. 2010), *reversed on other grounds*, 647 F.3d 1021 (10th Cir. 2011).

For some of the maps, however, Agent Raschke will estimate the ranges of the cell towers used by phones connected to Lopez, Evans, and Zambrano. Agent Raschke is expected to testify, based on his training and experience in cell site and cellular record analysis, that he can estimate ranges around cellular towers based on the proximity of the towers to other towers in the area. Agent Raschke's maps will illustrate that, on a number of occasions, pay phones used to make ransom calls were within the estimated ranges of cell towers phones connected to Lopez and Zambrano used to make or receive calls shortly before or after ransom calls.

Because part of Agent Raschke's testimony that involves expert testimony under Rule 704, on the date of the filing of this motion, the government has provided defense counsel with a letter disclosing Agent Raschke as an expert witness on cellular record analysis. A copy of the letter provided to defense counsel is attached as Exhibit A. This is appropriate expert testimony under Federal Rule of Evidence 702 because: (1) Agent Raschke will be testifying based on specialized knowledge and his training and experience; (2) the testimony will be technical and will aid the trier of fact to determine issues in this case, namely, various defendants' locations at or around the time of ransom calls and other significant events; (3) the analysis is based on sufficient facts or data, namely the cell site records; (4) the testimony is the product of reliable principles and methods, as will be established by Agent's Raschke's testimony; and (5) Agent Raschke has reliably applied the principles and methods to the facts

of the case. Accordingly, the government seeks a pre-trial ruling as to the admissibility of the exhibits that Agent Raschke is preparing and as to his testimony.

## II.     Motion to Bar Evidence or Argument Related to Penalties Faced by Defendants

The government respectfully moves this Court to preclude defendants from introducing evidence, making argument, or otherwise mentioning the potential penalties faced by defendants if convicted. The Seventh Circuit has unequivocally held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) *vacated in part on other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) ("[t]he sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court.").

Argument or evidence concerning punishment is improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975)); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict"); *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter

exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence."). Mention of the potential penalties faced by defendants would serve only the improper purpose of jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'" (quoting *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980)).

The government is not suggesting through this motion that evidence of penalties faced by co-defendant Jerry Zambrano should be barred in the event Zambrano testifies as a government witness. Instead, the government seeks an order precluding defense counsel from mentioning or introducing evidence regarding any of the range of penalties defendants may face if convicted.

### III. <u>Right of Minor A and his Father Not to Be Excluded From Trial</u>

Pursuant to 18 U.S.C. § 3771(a)(3), the government moves this Court for an order allowing both Minor A and his father to be present during the trial in this case. Federal Rule of Evidence 615 provides that at a party's request, courts must order witnesses excluded so that they cannot hear other witnesses' testimony. Rule 615 recognizes numerous exceptions, including for "a person authorized by statute to be present." Fed.R.Evid. 615(d). Section 3771(a)(3) provides a statutory basis for Minor A and his father to be present at trial in this case. That statute states that crime victims have "[t]he right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other

testimony at that proceeding." In addition, § 3771(b)(1) provides that "[b]efore making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding. The reasons for any decision denying relief under this chapter shall be clearly stated on the record."

In this case, the government expects both Minor A and his father to testify at trial. Although the government has not specifically asked them whether they would like to be present for all aspects of the trial, the government believes that they will want to be present for the trial in its entirety because Minor A and his father have attended nearly every hearing for this case thus far, even routine status hearings.

Moreover, with respect to concerns about Minor A or his father potentially changing their testimony, they are both expected to be among the government's first witnesses at the trial. Moreover, they have also both been interviewed by the government on numerous occasions about the kidnapping and ransom calls, and the government has provided reports of those interviews to the defendants. Thus, no showing can be made by clear and convincing evidence that the testimony of Minor A or his father would be materially altered if they heard other testimony at trial.

Finally, there are no constitutional concerns with allowing Minor A and his father to be present for the trial because there is no due process right to have witnesses excluded. As the Seventh Circuit has held:

> A refusal to exclude ("separate") witnesses until they testify is not a denial of due process. Separation or sequestration of witnesses, on which see *Geders v. United States*, 425 U.S. 80, 87 (1976); Fed.R.Evid. 615, is a long-established and well-recognized measure designed to increase the likelihood that testimony will be candid. But the due process clause does not incorporate every refinement of legal procedure designed to make trials fairer or more accurate–not even one hallowed by time. *See, e.g.*, *Watson v. Camp*, 848 F.2d 89 (7th Cir. 1988). It forbids only egregious departures (illustrated by *Walberg v. Israel*, 766 F.2d 1071 (7th Cir. 1985)) from accepted standards of legal justice. *Hill v. United States*, 368 U.S. 424, 428 (1962).

*Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988); *see also United States v. Edwards*, 526 F.3d 747, 758 (11th Cir. 2008) (refusing to exclude victim-witness based on 18 U.S.C. § 3771(a)(3), noting that a "-criminal defendant has no constitutional right to exclude witnesses from the courtroom.").

Accordingly, the government seeks a ruling from the Court that Minor A and his father can be present during all parts of the trial they wish to attend.

## IV. <u>Allegations of Witness Wrongdoing Not Involving Dishonesty</u>

The government has produced to defense counsel, and will continue to produce to defense counsel as necessary, materials setting forth potential impeachment material for some witnesses in this case. In an abundance of caution, the government has produced various materials that do not constitute admissible impeachment, including criminal history reports of some government witnesses. Of course, the mere fact that the government has produced to the defense a fact or an allegation does not render it admissible at trial. By this motion, the government moves this Court to preclude defense counsel from introducing at trial,

during the cross-examination of government witnesses, improper impeachment questioning or evidence.

### A. Arrests

The government will disclose to defense counsel the rap sheets and criminal histories of witnesses it may call at trial (and it will continue to do so if that list changes). Some of these witnesses have been arrested on prior occasions. Evidence of a prior arrest should be precluded in accordance with the strictures of Rules 609 and 608. Federal Rule of Evidence 609 allows for the admission of a witness's felony conviction for purposes of impeachment under certain specified circumstances. Under the Rule, "[f]or the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . ." Fed. R. Evid. 609. By its express terms, Rule 609 permits evidence only of convictions, not arrests.

Nor are arrests admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness.[1] Courts have not construed Rule 608(b) to permit cross-examination on prior arrests absent special facts bearing on the witness's character for the specific trait of truthfulness. By way of example, one of the witnesses the

---

[1] Even then, these past instances may not be proved by extrinsic evidence. *See* Fed. R. Evid. 608(b).

government intends to call at trial has a prior arrest for retail theft. The fact of the arrest, and any questions about the conduct underlying the arrest, should be barred because retail theft is not a crime involving dishonesty. *See, e.g.*, *Clarett v. Roberts*, 657 F.3d 664, 669 (7th Cir. 2011) ("Retail theft lacks an element of an act of dishonesty that is common to crimes of this type. As such, '[t]his circuit generally does not count retail theft as a crime of dishonesty' for purposes of Rule 609(a)(2).") (*quoting Kunz v. DeFelice*, 538 F.3d 667, 675 (7th Cir. 2008)).

Thus, unless defendants can demonstrate that the conduct underlying any arrest implicates a witness's character for truthfulness (an inquiry that should be done outside the presence of the jury), defendants should be precluded from inquiring into the conduct.

### B. Other "Bad Acts" By the Witnesses

To the extent they are known, the government has disclosed, and will continue to disclose to defense counsel, "bad acts" by its witnesses known to the government. Under Rules 611 and 608(b), defendants are permitted to inquire into specific bad acts of the witness only if these acts are probative of truthfulness. So the Court can make the appropriate rulings, the government requests that defense counsel identify the prior conduct about which they intend to cross-examine a given witness and demonstrate how that conduct is probative of truthfulness. This should occur outside the presence of the jury and before a witness testifies at trial, to prevent jury nullification and/or undue prejudice.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the above motions *in limine* be granted.

                                        Respectfully submitted,

                                        GARY S. SHAPIRO
                                        Acting United States Attorney

                              By: /s/ Jason A. Yonan
                                        JASON A. YONAN
                                        SAMUEL B. COLE
                                        Assistant U.S. Attorneys
                                        219 S. Dearborn Street, 5th Floor
                                        Chicago, Illinois 60604
                                        (312) 353-5300

Dated: July 25, 2012