UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 10 CR 747-3 |
| vs. ) | Judge Joan Humphrey Lefkow |
| ) | |
| ANTONIO EVANS ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO SUPPRESS IDENTIFICATION AND REQUEST FOR
EVIDENTIARY HEARING**

The UNITED STATES OF AMERICA, by its attorney, GARY S. SHAPIRO, Acting United States Attorney for the Northern District of Illinois, hereby presents its response to defendant Antonio Evans' motion to suppress identification and request for evidentiary hearing. (Docket #84).[1] For the reasons stated below, the government requests that defendant's motion be denied.

**I.  Background**

The indictment in this case charges defendant with conspiracy to commit kidnapping, in violation of Title 18, United States Code, Section 1201(c) (Count One) and kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) (Count Two). More specifically, the indictment alleges that beginning no early than in or about early April 2010, and continuing until at least April 25, 2010, in Cicero and Chicago, in the Northern District of Illinois, defendant, along with co-defendants Jose Lopez and Jerry Zambrano, did conspire

---

[1] Defendant filed his motion under seal because it referenced and attached materials labeled as sensitive pursuant to the protective order governing discovery in this case. Specifically, defendant's motion and the materials attached to it list the name of the victim and the victim's father. The government has not filed this response under seal and will simply refer to the victim and the victim's father without using their names. The government will also reference exhibits that defendant attached to his motion.

with each other and others to knowingly and unlawfully seize, confine, kidnap, abduct, carry away, and hold for ransom or reward another person, namely Minor A, and to use means, facilities, and instrumentalities of interstate commerce in committing and in furtherance of the offense, namely, telephones operated on the interstate network of AT&T, a telephone service provider.

Attached to defendant's motion are several of the relevant interview reports. The reports show that on October 18, 2010, during an interview with the FBI, the victim's father stated that one morning a couple of days before the kidnapping, he saw two African-American males walking in an alley behind his house. The victim's father told the FBI that the individuals appeared to be looking at his house while they were walking around. The victim's father said that his wife and a neighbor also said that they observed two African-American males walking in the alley and on the street near his home a couple days prior to his son being kidnapped. The victim's father stated that at the time he, his wife, and his neighbor all thought this was out of the ordinary because they live in a Hispanic neighborhood. The victim of the kidnapping himself is not able to identify the individuals who kidnapped him, but is able to say that both of the individuals were African-American.

Defendant was arraigned on the charges in this case on October 26, 2011. On the next day, the victim's father contacted the FBI Special Agent assigned to this matter to say that he and his son went to defendant's arraignment. The victim's father stated that at the arraignment he recognized defendant as one of the African-American males walking around his house shortly before the kidnapping.

On January 18, 2012, defendant's attorney asked for additional information about how the victim's father was aware of the arraignment. On the following day, the government provided defense counsel with the letter attached as Exhibit A to this response. In the letter, the government stated that the victim's father was notified of defendant's arraignment through the Victim Notification System administered by the Victim/Witness Unit at the United States Attorney's Office. As stated in the letter, the FBI Agent assigned to this matter did not direct the victim's father to attend the arraignment and did not herself attend the arraignment. The FBI Agent learned that the victim's father attended the arraignment after it had taken place, when the victim's father called to say that he saw defendant at the arraignment and recognized him to be one of the individuals walking near his house shortly before the kidnapping.

**II. <u>Analysis</u>**

In his motion, defendant argues that the victim's father's pre-trial identification was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293 (1967). Defendant also argues that, as a result, both the identification at the arraignment and any in-court identification at trial should be barred. Defendant's argument, however, runs counter to the Supreme Court's opinion in *Perry v. New Hampshire*, –U.S.–, 132 S.Ct. 716 (2012). In *Perry*, the Supreme Court addressed the issue of suggestive circumstances not based on improper government conduct that led a witness to identify a particular person as the perpetrator of a crime. The Court held that:

>Our decisions, however, turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array. When no *improper* law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallability of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id.* at 721 (emphasis added).

Throughout the opinion in *Perry*, the Court made repeated reference to improper government conduct being necessary for suppression based on suggestive circumstances, and cited other prior Supreme Court cases on the subject. Below are quotations from *Perry*, along with citations to other Supreme Court cases:

> \* Synthesizing previous decisions, we set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and reiterated in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the approach appropriately used to determine whether the Due Process Clause requires suppression of an eyewitness identification *tainted by police arrangement*.

*Id.* at 724 (emphasis added).

> \* Instead of mandating a *per se* exclusionary rule, the Court held that the Due Process Clause requires courts to assess, on a case-by-case basis, whether *improper* police conduct created a "substantial likelihood of misidentification." *Biggers*, 409 U.S., at 201, 93 S.Ct. 375; *see Brathwaite*, 432 U.S., at 116, 97 S.Ct. 2243.

*Id.* (first emphasis in original; second emphasis added).

> \* [Defendant's arguments] ignore a key premise of the *Brathwaite* decision: A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances, the Court said, *is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place*.

*Id.* at 726 (emphasis added).

> \*   Beyond genuine debate, then, prevention of *unfair police practices* prompted the Court to extend a defendant's right to counsel to cover postindictment lineups and showups.

*Id.* at 727 (emphasis added).

> \*   The fallability of eyewitness evidence does not, *without the taint of improper state conduct*, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness.

*Id.* 728 (emphasis added).

> \*   Our unwillingness to enlarge the domain of due process as Perry and the dissent urges rests, in large part, on our recognition that the jury, not the judge, traditionally determines the reliability of evidence.

*Id.*

The reference to improper police conduct throughout *Perry* is critical to this case because, plainly, there was no improper conduct. The government gave notice of the arraignment to the victim's father pursuant to its statutory obligation to provide victims of crime notice of events relevant to their case. *See* 18 U.S.C. § 3771(a)(2) (noting that a crime victim has the right "to reasonable, accurate and timely notice of any public court proceeding . . .involving the crime . . . ."). The government did not direct the victim's father to attend the arraignment or ask him to see if he could identify defendant. In fact, the FBI Agent assigned to this matter did not even attend the arraignment.

Since there was no improper or suggestive government conduct in this case, there is no deterrent effect served by suppressing the victim's father's identification. As noted above, a primary aim of suppressing unduly suggestive police procedures is to deter law

5

enforcement from using improper lineups, showups, and photographs. No deterrent purpose would be served in this case because the government did nothing improper. *See id.* at 726 ("This deterrence rationale is inapposite in cases, like Perry's, in which the police engaged in no improper conduct."). Instead, in this case, as in *Perry*, defendant has the evidentiary tools to challenge the identification at trial through cross examination, and the jury should serve to judge the reliability of the evidence in question. *Id.* at 728.

Defendant, in support of his position, cites *United States v. Rodgers*, 387 F.3d 925 (7th Cir. 2004), where the court held that it was irrelevant for purposes of an unduly suggestive identification that the circumstances surrounding the identification were unintentional. 387 F.3d at 937. But *Rogers* simply cannot be squared with the Supreme Court's opinion in *Perry*. Indeed, other courts have noted that *Perry* changed the landscape with respect to identifications not involving government misconduct. *See, e.g.*, *United States v. Lewis*, 838 F. Supp. 2d 689, 696 n.6 (S. D. Ohio 2012) (noting that "[b]efore *Perry* . . . the Sixth Circuit applied the two-step test even in instances where the witness' identification involved no police involvement.")

While the Seventh Circuit in *Rogers* cited *Manson v. Brathwaite* in support of its position that unintentional police conduct is subject to exclusion under the Due Process Clause, the citation to *Manson* was in reference to the Supreme Court's holding that reliability is linchpin in determining the admissibility of identification testimony. The Supreme Court in *Perry*, however, explicitly rejected the argument that the language in *Brathwaite* applied regardless of whether law enforcement was responsible for creating the

6

suggestive circumstances:

> Perry has removed our statement in *Brathwaite* from its mooring, and thereby attributes to the statement a meaning a fair reading of our opinion does not bear. As we just explained, . . . the *Brathwaite* Court's reference to reliability appears in a portion of the opinion concerning the appropriate remedy *when the police use an unnecessarily suggestive identification procedure*. The Court adopted a judicial screen for reliability as a course preferable to a *per se* rule requiring exclusion of identification evidence whenever law enforcement officers employ an improper procedure. The due process check for reliability, *Brathwaite* made plain, comes into play only after the defendant establishes improper police conduct.

132 S. Ct. at 725-26 (emphasis in original).

Accordingly, because there was no improper or suggestive government conduct in this case, suppression under the Due Process Clause is not warranted, and the Court need not reach the issue of the suggestiveness of the identification at issue. Defendant's motion should be denied.

                                        Respectfully submitted,

                                        GARY S. SHAPIRO
                                        Acting United States Attorney

By:   /s/ Jason A. Yonan
        JASON A. YONAN
        Assistant United States Attorney
        219 South Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 353-4156

Dated: August 3, 2012